Filed 06/07/24

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03739

Joseph Lampman v Department of Corrections

## Opinion and Order on Cross-Motions for Summary Judgment

Plaintiff–inmate Joseph Lampman seeks Vt. R. Civ. P. 75 review of the Department of Corrections' ("DOC's") determination, following a hearing, that he is guilty of a Major B13 infraction. Major B13 refers to: "Engaging in sexual acts or activity without use or threat of force, to include but not limited to, *kissing*, fondling of self or another person in a manner, which produces or is intended to produce sexual stimulation or gratification without the appearance of threat or harm on the part of both persons." DOC Policy 410.01, Attachment 1 at 20 (emphasis added). The allegation was that Mr. Lampman greeted his wife during a visit with a kiss. Following an evidentiary hearing, the hearing officer found that he, in fact, kissed his wife in violation of Major B13. Mr. Lampman apparently conceded that he had kissed his wife. Paperwork related to the disciplinary charge reflects that, after being charged, Mr. Lampman argued only that he did not know that he was not allowed to kiss a visitor. It is unclear what may have transpired at the hearing because the parties have submitted no transcript or recording of it, and the hearing officer made no findings or rulings related to the only issue raised in this case: whether Mr. Lampman did or did not have fair notice as to whether kissing was permitted or prohibited. The parties have filed cross-motions for summary judgment

addressing, as a *de novo* matter, whether Mr. Lampman had fair notice that kissing was not permitted in the facility.[1]

I.      Procedural Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375,

---

[1] The State also argues that the Court lacks jurisdiction to hear this case. The argument appears to be based on its misperception that Mr. Lampman is attempting to challenge the DOC's authority to have the policy at issue. He expressly is not. He is seeking Rule 75 review (in the nature of *certiorari*) of the DOC's quasi-judicial determination that he violated a facility rule. He is entitled to seek that review, and the Court has subject matter jurisdiction to conduct it.

380. Where, as here, there are cross-motions for summary judgment, the parties opposing summary judgment "are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

In this instance, the Court's examination is further cabined by Vt. R. Civ. P. 75. Rule 75 allows judicial review of governmental administrative decisions, but only "if such review is otherwise available by law." While the case law interpreting Rule 75 has insulated the overwhelming majority of discretionary administrative decisions made by the Department from judicial review, *see, e.g., Rheaume v. Pallito*, 2011 VT 72, ¶11, 190 Vt. 245, 250, the Court may still review quasi-judicial decisions in accordance with the principles of *certiorari* review. *Id.*

The scope of *certiorari* review under Rule 75 is very narrow. "[W]hen reviewing administrative action by the [Department] under V.R.C.P. 75, we will not interfere with the Department's determinations absent a showing that the [Department] clearly and arbitrarily abused its authority." *King v. Gorczyk*, 2003 VT 34, ¶ 7, 175 Vt. 220, 224; *Molesworth v. University of Vermont*, 147 Vt. 4, 7 (1986) (*certiorari* review "confined to addressing substantial questions of law affecting the merits of the case.").

More specifically, in the context of reviewing disciplinary determinations made in the prison setting, the Vermont Supreme Court has adopted the standards set forth by the United States Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *LaFaso v. Patrissi*, 161 Vt. 46, 49 (1993). Although due process requires the Department to prove inmate disciplinary infractions by a preponderance of the evidence at the disciplinary hearing, *id.* at 51, under *Hill*, this Court will uphold a disciplinary determination if "there is *any evidence* in the record to support the conclusion reached by

the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *King*, 2003 VT 34, ¶ 7, 175 Vt. at 224 (noting same); *Lafaso*, 161 Vt. at 49 (prison determination "must be upheld if it is supported by 'some evidence' in the record" (citation omitted)).

"Review by certiorari under Rule 75 ordinarily 'provides only for review of legal issues,' and is therefore usually 'restricted to the record' from the administrative proceeding." *Ketchum v. Town of Dorset*, 2011 VT 49, ¶ 15, 190 Vt. 507, 510 (citations omitted) (but noting that the record may be expanded on review in appropriate circumstances).

## II.    Analysis

The Court fails to see how it can effectively rule on the present record.  Mr. Lampman apparently concedes that he kissed his wife.  He claims that his conviction violates his due process rights, however, because he never had fair notice that kissing would violate a disciplinary rule.

One treatise describes the notice requirement as "textbook" and elaborates as follows:

> Due process . . . requires that inmates receive fair notice of a rule before they can be sanctioned for its violation.  Prison regulations should be clear and intelligible, and they should also be made available to those at whom they are directed. Unless the conduct violates criminal statutes, inmates should not be expected to abide by rules of which they have not been informed.  Some courts, therefore, have held that the failure to provide incoming inmates with printed copies of disciplinary rules and regulations and the failure to read such rules to illiterate inmates violates due process. Generally speaking, however, as is true in the case of other types of procedural violations, the courts follow a "harmless error" rule.  Thus, a court held that an inmate was properly disciplined for a violation of prison disciplinary rules, despite his claim that he never received a copy of the rulebook since he admitted that he had previously received a copy of the rulebook while incarcerated at another prison.

2 Michael B. Mushlin, *Rights of Prisoners* § 10:2 (5th ed.); *see also* ABA Treatment of Prisoners Standards (3d ed.) § 23-4.2 cmt. ("Notice of what conduct is prohibited is therefore a fundamental component of due process.").

In many cases where fair notice is challenged, the asserted lack of notice was caused by a vague or opaque rule that a reasonable person would not have understood to forbid the inmate's actions. *See, e.g., Keus v. Pallito*, No. 2012-225, 2012 WL 5974087 (Vt. Sept. 26, 2012) (unpub. mem.) (urine sample rule said nothing about whether inmate could make more than one attempt at producing sufficient volume). Such a claim largely presents a legal question. This case is different. DOC Policy 410.01, Attachment 1, Major B13 is crystal clear that inmates are not permitted to kiss other persons.[2] Mr. Lampman's claim is that he was unaware of the rule, not that the rule itself is unclear. That is largely a factual question: whether he knew or should have known of the rule.

This case is here for *certiorari* review, not a wholesale *de novo* trial of the alleged violation. The principal evidentiary proceeding was the hearing before the hearing officer. No transcript or recording of that hearing is in the record of this case. Neither party has suggested that the record of that proceeding is unavailable, attempted to reconstruct it in useful detail if it is unavailable, or has explained why additional facts need to be developed now. Other than a few vague and self-serving assertions by Mr. Lampman as to what happened there, the Court has no way of knowing whether Mr. Lampman raised the notice issue at the hearing (or waived it), how he raised it if he did

---

[2] Major B13 applies only to kissing "which produces or is intended to produce sexual stimulation or gratification." The hearing officer made no finding on this aspect of the violation. Nor has Mr. Lampman challenged the violation on this basis, however.

at all, whether there was any countervailing evidence, whether and how the hearing officer ruled on the matter orally (he did not rule on it in writing), and whether the case may need to be remanded for further findings if the notice issue was raised but the hearing officer simply failed to rule on it.

Mr. Lampman has supported most of the allegations of fact in his statement of undisputed facts by reference to his own affidavit rather than by pointing to any evidence in the record before the hearing officer. The State has responded to many of Mr. Lampman's allegations of fact, not by coming forward with countervailing evidence, but by asserting, "Respondent is without sufficient information from this matter's record to reply." It presumably refers to the underlying record before the hearing officer, which is what this Court should be reviewing when undertaking *certiorari* review under Vt. R. Civ. P. 75. It, too, however, has attempted to create a new factual record on the issue of notice.

Conclusion

For the foregoing reasons, the parties' motions for summary judgment are denied. The Court requests that the parties submit the administrative record into the record of this case, or a motion to supplement the record with grounds therefor, prior to any further dispositive motion practice. The Court will set a deadline of 60 days for a motion for summary judgment but will allow cross-motions to be filed within 30 days thereafter.

Electronically signed on Tuesday, June 4, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge