Vermont Superior Court
Filed 07/15/25
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-05422

| Victoria Griffin v Nicholas Deml et al |
|---|

### DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Victoria Griffin is an inmate in the custody and control of the Commissioner of the Vermont Department of Corrections (DOC). She seeks review and vacation of her conviction for violating a disciplinary rule. Ms. Griffin and DOC have both moved for summary judgment. The court grants Ms. Griffin's motion and denies DOC's.

<u>Undisputed Facts</u>

Neither party disputes the following facts. Ms. Griffin is incarcerated under DOC custody. At the time of the incident at issue, Ms. Griffin was designated as having a Serious Functional Impairment ("SFI"). On October 27, 2024, Ms. Griffin was housed in a holding cell in the booking area and was under two-officer-escort status. At approximately 11:50 a.m., two officers escorted her to and from the bathroom. Ms. Griffin refused to wear an anti-suicide smock and instead was covered with a blanket while moving between her cell and the bathroom. When she was returning to her cell, Ms. Griffin dropped the blanket, leaving her completely unclothed. She was visible to the two officers and may have been seen by other incarcerated individuals.

On November 3, 2024, DOC issued Ms. Griffin a disciplinary report for a Major B6 violation: indecently exposing herself. DOC gave Ms. Griffin two notices of hearing: the first indicated that the hearing would take place on November 5, and the second indicated that the hearing was continued and would take place on November 6. Ms. Griffin signed and dated both notices.

Ms. Griffin's disciplinary hearing took place on November 6. A hearing assistant represented Ms. Griffin at the hearing. She brought two procedural issues to the Hearing Officer's attention: (1) the Disciplinary Report failed to identify the qualified mental health professional who performed an assessment of Ms. Griffin before her hearing, and (2) the reporting officer failed to sign both the Incident Report and the Disciplinary Report, and failed to initial or record the date and time that the Disciplinary Report was delivered to Ms. Griffin.

Ms. Griffin pled not guilty and provided oral testimony regarding the event in question. She stated that she did not expose herself intentionally and that she was undergoing mental health delusions at the time. The hearing officer found Ms. Griffin guilty of indecent exposure and sentenced her to write an essay on why and how indecent exposure is a disruptive behavior. The disciplinary committee affirmed the conviction. Ms. Griffin timely appealed to the facility superintendent on the grounds that her procedural due process rights were violated. The superintendent denied her appeal, stating "I don't see any due process violations." Ms. Griffin then filed suit in this court for review of DOC's decision pursuant to V.R.C.P. 75.

## Parties' Motions

DOC filed a motion for summary judgment that is supported by a statement of undisputed material facts ("DOC's SUMF"). Ms. Griffin opposed the motion, responded to DOC's SUMF, and filed an opposition. She also filed her own cross-motion for summary judgment, supported by a separate statement of undisputed material facts ("Ms. Griffin's SUMF"). DOC failed to respond to that submission Accordingly, per V.R.C.P. 56(e)(2), to the extent that DOC's SUMF does not anticipate and so address assertions set forth in Ms. Griffin's SUMF, the court deems those facts undisputed for purposes of her motion. Those facts include the following:

- At all times relevant to the instant complaint, Ms. Griffin was in a mental health crisis. Ms. Griffin's SUMF ¶ 3.

- At all times relevant to this complaint, [DOC] staff directed Ms. Griffin to wear a safety smock. *Id*. ¶ 4.

- At all times relevant to this complaint, Ms. Griffin was engaging in scratching behaviors resulting in a rash on her skin. *Id*. ¶ 5.

- On October 27, 2024, [DOC] staff moved Ms. Griffin from a padded cell to a booking cell. *Id*. ¶ 6.

- Ms. Griffin struggled to wear the smock and was wrapped in a blanket by DOC staff. *Id*. ¶ 7.

- After using the bathroom, Ms. Griffin dropped the blanket and returned to her booking cell. *Id*. ¶ 9.

- A qualified mental health provider did not assess Ms. Griffin prior to her disciplinary hearing. *Id*. ¶ 11.

- During Ms. Griffin's disciplinary hearing, [Ms. Griffin's Hearing Assistant] pointed out that DOC had failed to identify the qualified mental health provider who had evaluated Ms. Griffin prior to the hearing. In response to this statement, the Hearing Officer stated that DOC was not

required to assess Ms. Griffin unless she was segregated, and she was not segregated. *Id*. ¶¶ 18–20.

- When asked whether she remembered being issued the Disciplinary Report, Ms. Griffin testified that she did not remember being issued the report and only learned of it because she was told about it the next day. *Id*. ¶¶ 24–25.

- When asked whether she should be held responsible for her actions, Ms. Griffin responded:

> You say responsible for actions, but if I'm delusional and don't know what's really going on around me, no, I don't think you can control it. If I don't even know what day of the week it is, I don't even know where I'm at, I don't even know what's going on around me, I don't know if I can control my actions in that situation. Because if I'm delusional, I think that things are going on. . . . If I don't know what's going on and I have no idea where I'm at or what day of the week it is or what's going on, I don't think you can hold me accountable for something like that 'cuz it's like you can't control your delusions. You know what I'm saying? That's something I generally can't control in the moment, like at that time. Like if I don't know what's happening or I'm trying to articulate what's going on, but I can't even tell you what's going on, then no, I don't think that. If I believe that I'm blowing up like a balloon and I have this whole delusion that there's all these things going on around me, then no, I don't think I can control that.

*Id*. ¶ 26.

- Ms. Griffin appealed her disciplinary conviction based on the reporting officer's failure to sign the report, the lack of noted date or time of delivery of the report to Ms. Griffin, that her behavior on October 27 was due to her mental health status, and that she lacked the intent to expose herself. *Id*. ¶ 29.

Analysis

"[I]n a Rule 75 action, the trial court is in the position of an appellate court in reviewing administrative agency decisions." *Hallsmith v. City of Monpelier*, 2015 VT 83, ¶ 20, 199 Vt. 488. "A prisoner has a constitutionally protected interest in disciplinary hearings that are 'not so lacking in procedural safeguards that they create substantial doubt that [she] committed the offense[] for which [she] [was] disciplined.' " *Herring v. Gorczyk*, 173 Vt. 240, 245 (2001) (quoting *Jackson v. Carlson*, 707 F.2d 943, 948 (7th Cir. 1983)); *see LaFaso v. Patrissi*, 161 Vt. 46, 51–52 (1993) (holding prisoner has "highly important interest" in not being unjustly disciplined, and discussing direct and indirect consequences of disciplinary record). Whether an individual was denied due process depends on whether prejudice resulted from the alleged denial. *State v. Mott*, 166 Vt. 188, 193 (1997); *see also King v. Korczyk*, 2003 VT 34, ¶ 9, 175 Vt. 220 (plaintiff failed to demonstrate he was prejudiced by DOC's failure to provide him with actual laboratory results of drug test before disciplinary hearing).

DOC argues that the deficiencies of which Ms. Griffin complains "were harmless and did not prejudice Petitioner." DOC motion at 1. It is noteworthy, however, that DOC only addresses the reporting officer's failure to sign the incident and disciplinary report and the failure to initial and document the date and time on the disciplinary report and hearing notices. Intentionally or otherwise, DOC ignores Ms. Griffin's argument that her due process rights were violated by the failure to have her evaluated by a qualified mental health professional before her disciplinary hearing.

The statutes that address incarcerated individuals have special provisions that apply to inmates with a serious functional impairment. Among these is the requirement that DOC "adopt rules . . . regarding the classification, treatment, and segregation of an inmate with a serious functional impairment. 28 V.S.A. § 701a. Consistent with this requirement, DOC's Facility Rules and Inmate Discipline #410.01 ("Facility Rules"), attached as Exhibit A to Ms. Griffin's motion, define an SFI-designated Inmate as "An inmate designated by the Chief of Mental Health Services to be severely functionally impaired, based on an inmate's diagnosis and functioning during incarceration and the recommendation of DOC medical and mental health providers."Facility Rules at 5.[1] The Facility Rules set forth steps that "shall" be followed if a staff person suspects a rule violation. Critically, for present purposes, the rules require, with respect to any inmate with a serious functional impairment, that a supervisor must refer the inmate for assessment by a qualified mental health professional before a disciplinary hearing is held. *Id*. at 7.[2] The assessment by the qualified mental health professional must include the following:

a) An opinion as to whether the behavior results from the serious functional impairment and if so, if the [disciplinary report] should be dismissed;

b) A determination if contraindications exist to using any specific sanction and specifically, segregation;

---

[1] This definition is consistent with, and implicitly incorporates the statutory definition of "Serious functional impairment":
> (A) a disorder of thought, mood, perception, orientation, or memory as diagnosed by a qualified mental health professional, which substantially impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life and which substantially impairs the ability to function within the correctional setting; or
> (B) a developmental disability, traumatic brain injury or other organic brain disorder, or various forms of dementia or other neurological disorders, as diagnosed by a qualified mental health professional, which substantially impairs the ability to function in the correctional setting.
28 V.S.A. 906(1).

[2] A "qualified mental health professional" is defined as:
> a person with professional training, experience, and demonstrated competence in the treatment of mental conditions or psychiatric disabilities or serious functional impairments who is a physician, psychiatrist, psychologist, social worker, nurse, or other qualified person determined by the Commissioner of Mental Health.
28 V.S.A. § 906(2).

c) A recommendation to the Hearing Officer for disposition or sanction options or alternative actions[.]

*Id*. Finally, before conducting a disciplinary hearing involving an SFI-designated inmate, the Hearing Officer must "confirm that the Supervisor referred the inmate to a qualified mental health professional for assessment[.]" *Id*. at 9.

DOC does not dispute that Ms. Griffin was an SFI-designated inmate when the alleged violation occurred. Indeed, the record includes Ms. Griffin's Disciplinary Report. The box next to the question "Is the inmate SFI?" is checked, "Yes." "If yes," the report form continues, "refer inmate to a QMHP for assessment before hearing is held." The box next to "Name of QMHP performing assessment," however, is blank. When Ms. Griffin's Hearing Assistant pointed out to the Hearing Officer that the name of the qualified mental health professional that was supposed to perform the assessment was not identified on the Disciplinary Report, the Hearing Officer responded: "You don't need an assessment unless [Ms. Griffin] is segregated. She wasn't segregated." Hearing Transcript, attached as Exhibit C to Ms. Griffin's motion, at 5. This was a clear error; so too was the failure to ensure that Ms. Griffin was assessed before the hearing commenced. Nor was this failure inconsequential: had Ms. Griffin had been assessed prior to the hearing, the mental health professional could well have determined that her behavior was the result of her serious functional impairment and that the disciplinary report should be dismissed.

DOC's failure to follow its own procedures when disciplining Ms. Griffin, who was an SFI-designated inmate, was a clear violation of Ms. Griffin's rights to procedural due process. Neither the Hearing Officer nor, on subsequent review, the facility superintendent, was free to ignore the plain mandate of the Facility Rules. *See Smith v. Pallito*, No. 184-7-12 Cacv, 2013 WL 3288046, at *3 (May 22, 2013) (Teachout, J.) ("[C]arrying out duly adopted procedural rules are not acts about which a hearing officer has discretion."). Nor was this error harmless; Ms. Griffin "is entitled to have an institutional record free from improperly obtained findings of disciplinary violations." *Id*. at *2; *see LaFaso*, 161 Vt. at 52 (discipline record may affect inmate's opportunity for early release or parole).

This conclusion obviates the necessity of addressing the other procedural deficiencies of which Ms. Griffin complains. The gravity of DOC's failure to comply with its own rules and have Ms. Griffin assessed by a qualified mental health professional before her disciplinary hearing is more than reason enough to invalidate the procedure by which her violation was adjudicated. Accordingly, the court vacates the indecent exposure conviction.

## <u>ORDER</u>

The court denies DOC's motion for summary judgment and grants Ms. Griffin's cross-motion for summary judgment. Ms. Griffin's conviction is hereby vacated. DOC shall expunge any reference to that conviction from her record.


Electronically signed pursuant to V.R.E.F. 9(d): 7/15/2025 11:20 AM

_____

Samuel Hoar, Jr.
Superior Court Judge