## Christopher Herring v. John Gorczyk

[789 A.2d 955]

No. 01-283

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 21, 2001

*Matthew Valerio*, Defender General, *Seth Lipschutz*, Prisoners' Rights Office, and *Rebecca Boucher*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*William H. Sorrell*, Attorney General, Montpelier, and *Douglas R. Marden*, Assistant Attorney General, Waterbury, for Defendant-Appellant.

**Skoglund, J.** Inmate plaintiff filed a V.R.C.P. 75 petition for review of governmental action challenging his conviction for a disciplinary rule violation. Defendant, Vermont Department of Corrections (hereinafter "DOC"), filed a motion for summary judgment. The trial court denied DOC's motion and granted summary judgment to plaintiff. DOC appeals. Because we hold that plaintiff's due process rights at the disciplinary hearing were violated by the hearing officer's reliance on statements of confidential informants without any independent assessment of the informants' credibility, we affirm the lower court's decision.

Plaintiff is an inmate committed to the custody and control of DOC at Southeast State Correctional Facility (SESCF). Plaintiff was charged with a Major B#20 Disciplinary Rule violation for "[p]ossession, introduction, or use of any alcohol, narcotics, depressants, stimulants, hallucinogenic substances or marijuana." A disciplinary hearing was held during which a hearing officer reviewed: four unsworn reports authored by investigating officers concerning statements of confidential informants, plaintiff's written statement, and an unsworn report by one investigating officer summarizing the information contained in the confidential informant reports. Under DOC procedures, when confidential informant evidence is admitted at a disciplinary hearing, the hearing officer must fill out "Appendix VI" forms. These forms purport to encapsulate information contained in the investigating officer's report, which in turn summarizes confidential informant statements. In keeping with procedure the hearing officer filled out four Appendix VI forms* — one for each confidential informant. Each form identifies the investigating officer(s) who interviewed the informant and requires the hearing officer to respond to the question: "[d]oes the interviewer believe the confidential informant was a reliable source of information in the past?" In this case, the hearing officer responded affirmatively to the above question on all four forms. Based solely on the summaries of confidential informants' statements included in the investigating officers' reports, the hearing officer found plaintiff guilty of a Major B#20 DR violation and sentenced him to five days placement in disciplinary segregation,

---

* In the Disciplinary Hearing Report filed by the hearing officer he states that his determination was "[b]ased upon Appendix IV — Confidential Informant Statements/Testimony." We will assume, as all parties to this appeal have assumed, that the hearing officer intended to write "Appendix VI," and not "Appendix IV," as there is no such appendix at issue in this appeal.

suspended for 30 days for good behavior, and three days loss of "good time." No interviewing or investigating officer testified at the disciplinary hearing.

Plaintiff timely appealed the decision to the SESCF Superintendent. Among several arguments, he claimed that "[t]he hearing officer did not make an independent finding of reliability of the confidential statements against Mr. Herring." The Superintendent denied the appeal, ruling that "[t]here appears to be reasonable and credible information to lead one to conclude you were guilty of the offense." Plaintiff then filed a complaint pursuant to V.R.C.P. 75 challenging the conviction. Plaintiff argued below that DOC violated his due process rights (1) by providing inadequate information from which to prepare a defense, and (2) because the hearing officer did not make an independent finding of reliability of the confidential informants. He advanced theories that the confidential informants were likely acting out of retaliation, possibly jealousy, and that they were possibly trying to deflect attention from their own drug trafficking activities.

DOC moved for summary judgment claiming the investigating officers' reports contained enough evidence to convict plaintiff by a preponderance of the evidence but, in the event the court disagreed, the court need only find "some evidence," citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), to uphold a prison disciplinary conviction. Plaintiff opposed DOC's motion and disputed certain facts asserted by DOC. Specifically, he noted that contrary to DOC's assertion, there was no lab report proving drug use. Moreover, he argued that because diminished due process rights available in prison settings require additional safeguards, it is necessary to independently establish the reliability of confidential informant testimony and none of the confidential informant reliability tests provided by *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985), had been met in this disciplinary action.

The superior court granted summary judgment for plaintiff finding: (1) there was no lab report in the record to support the Major B#20 conviction; (2) there was no independent verification by the hearing officer of the confidential informant testimony; (3) none of the reliability tests of *Mendoza* were met and further, "[a] bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt." *Freitas v. Auger*, 837 F.2d 806, 810 (8th Cir. 1988). The DOC filed a motion to reconsider asserting, among other

claims, that the court erred in granting summary judgment to plaintiff rather than doing an in camera review of the confidential information. The court denied DOC's motion, stating "no finding regarding credibility of informant was made by [hearing officer]. Record does not support conviction."

■ Summary judgment is appropriate, and the moving party is entitled to judgment as a matter of law, when there are no genuine issues of material fact. *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). Upon review of a grant or denial of summary judgment this Court applies the same standard as the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). On judicial review of the sufficiency of evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by "some evidence" in the record. See *LaFaso v. Patrissi*, 161 Vt. 46, 49, 633 A.2d 695, 697 (1993); see also *Hill*, 472 U.S. at 455 ("some evidence" standard is the appropriate standard for judicial review of the actions of prison authorities). To determine whether the "some evidence" standard is met, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "[T]he 'some evidence' standard may be met even where the only evidence was supplied by a confidential informant, as long as there has been some examination of indicia relevant to [the informant's] credibility." *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) (internal quotations and citations omitted). As noted by the Second Circuit in *Russell v. Scully*, 15 F.3d 219, 223 (2d Cir. 1993), due process requires more than "wholesale reliance upon a third party's evaluation of that credibility."

■ In *Mendoza* the Seventh Circuit wrote: "[t]o protect the inmate's interest in a fair hearing, our court requires some indication of the reliability of confidential informants when confidential information is the basis for a prison disciplinary decision." 779 F.2d at 1293. It then set out four ways the reliability of a confidential informant may be established: (1) by oath of the investigating officer as to the truth of the report containing information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that he had firsthand knowledge of the sources of information and considered them reliable on the basis of

their past record of reliability; or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential informant. *Id.* While not an exclusive list, none of these reliability tests were met in this case.

On the first *Mendoza* factor, the investigating officers neither swore to the validity of their reports, nor appeared before the hearing officer. On the second *Mendoza* factor, the DOC claims the existence of multiple inculpatory reports by confidential informants renders them "self-corroborating" and thus reliable under the second test. This reasoning is obviously flawed.

> In a prison environment, where authorities must depend heavily upon informers to report violations of regulations, an inmate can seek to harm a disliked fellow inmate by accusing that inmate of wrongdoing. Since the accuser is usually protected by a veil of confidentiality that will not be pierced through confrontation and cross-examination, an accuser may easily concoct the allegations of wrongdoing. Without a bona fide evaluation of the credibility and reliability of the evidence presented, a prison committee's hearing would thus be reduced to a sham which would improperly subject an inmate accused of wrongdoing to an arbitrary determination.

*Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir. 1982).

These risks are not necessarily decreased simply because there are four inmates making a report as opposed to just one. Four inmates may be similarly motivated to concoct a falsehood or may act in collaboration. Reliance on the mere fact that there are four reports, instead of one, or even two, does not negate the risk inherent in this type of testimony. Absent some additional, specific, independently-corroborated indicia of testimony included in those reports, they do not satisfy the second *Mendoza* test.

But it is the third reliability test identified in *Mendoza* that proves particularly fatal for the DOC in this case. See 779 F.2d at 1293 (confidential informant reliability may be established by a statement on the record that the decision-maker made an independent assessment of informant's reliability). There is no statement or finding by the hearing officer that he considers the confidential informants reliable.

The requirement that there be some independent assessment of a confidential informant's reliability is rooted in the basic procedural

due process right to confront and cross-examine witnesses. Recognizing, however, that the rights and privileges of one lawfully imprisoned may be diminished by the needs and exigencies underlying our penal system, "mutual accommodation between institutional needs and objectives and the provisions of the Constitution" necessitate a delicate balancing of these competing interests. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). The government interest in preserving institutional order, discipline and safety is balanced against a prisoner's rights to call, confront and cross-examine witnesses. Preserving institutional order and safety is "especially implicated" when inculpatory information is provided by confidential informants because "revealing the names of informants . . . could lead to the death or serious injury of some or all of the informants." *McCollum v. Miller,* 695 F.2d 1044, 1048 (7th Cir. 1982). The prisoner's right to confront adverse witnesses may thus be permissibly circumscribed, and even denied, if exercising these rights would be "unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566. However, when usual due process rights are pared away in favor of prison security interests, other safeguards become all the more necessary. *McCollum,* 695 F.2d at 1048. A prisoner has a constitutionally protected interest in disciplinary hearings that are "not so lacking in procedural safeguards that they create substantial doubt that these prisoners committed the offenses for which they were disciplined." *Jackson v. Carlson,* 707 F.2d 943, 948 (7th Cir. 1983).

An independent assessment of confidential informant reliability is one such safeguard against infringement of an inmate's procedural due process rights. See, e.g., *Taylor v. Wallace,* 931 F.2d 698, 702-03 (10th Cir. 1991); *Freitas v. Auger, supra; Hensley v. Wilson,* 850 F.2d 269, 276-77 (6th Cir. 1988); *Henderson v. Carlson,* 812 F.2d 874, 879-80 (3d Cir.), *cert. denied,* 484 U.S. 837 (1987); *Mendoza v. Miller,* 779 F.2d at 1293; *Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir. 1983); *Kyle v. Hanberry,* 677 F.2d at 1389.

> It is hardly debatable that a prison disciplinary committee charged with the responsibility of finding facts for the purpose of determining whether there is some evidence to support an allegation that an inmate is guilty of a disciplinary violation must assess both the sufficiency of the evidence and the credibility of the witnesses who provide it.
>
> . . . .

In cases in which prisoner misconduct is found upon evidence consisting entirely, or even substantially, of the statement of an investigating officer that he has been told by confidential informants that the misconduct occurred, and that the investigator believes the informant·to be reliable, there must be some independent determination by the committee of the informant's reliability.

*Hensley*, 850 F.2d at 276.

In *Hensley* inmates appealed a disciplinary committee's determination of guilt which was based "almost entirely" on the strength of information provided to prison investigators by confidential informants. See *id.* at 271. In reaching its determination, the disciplinary committee relied on the investigator's unsworn written report which apparently contained the investigator's conclusions, based on the information supplied by the informants, that the plaintiffs were guilty of the misconduct charges against them. *Id.* "The only reference in the disciplinary committee findings as to the reliability of the informants is that the investigating officers 'testified' that the confidential 'information given them is reliable,' or that 'their source of information is reliable.'" *Id.* at 272. In short, there was no "committee finding that either the confidential informants or their information was determined by the committee to be reliable." *Id.*; see also *Kyle*, 677 F.2d at 1390 (footnote omitted) ("[W]here the committee's determination is based upon hearsay information derived from an unidentified informant, minimum due process mandates that the IDC (Inmate Disciplinary Committee) undertake in good faith to establish the informant's reliability.").

This case concerns a conviction of a disciplinary violation based solely upon confidential informant allegations as reported by investigating officers. And, as in *Hensley*, there is no independent finding by the hearing officer of the reliability of those informants. The only assessment of the confidential informants' reliability in this case was made by the officers who interviewed the informants for this investigation and never testified under oath at the hearing. Question #7 of Appendix VI asks: "[d]oes the interviewer (the officer who interviewed the confidential informant) believe the confidential informant was a reliable source of information in the past?" The hearing officer answered affirmatively, that in all four cases, the interviewer did believe the confidential informant was a reliable source of information in the past. In response to the second part of

Question #7 which asks "why," the hearing officer noted the following reasons for the interviewing officers' beliefs: "prior information was used in past and proven credible/reliable," "given reliable information in past," "information was used in the past and proven reliable" or because the belief was "based upon credible evidence in the investigation." However, nowhere on the Appendix VI forms does the hearing officer himself make an independent finding that either the confidential informant or his information was determined by him to be reliable.

As the Sixth Circuit acknowledged in *Hensley*,

> [r]eliance upon an investigating officer's statement that an informant is reliable is not necessarily a fatal procedural flaw, but if the committee does not discover, and assess, the investigating officer's *basis* for concluding that the informant is reliable, it cannot be said that the committee has made reasoned choices about the truth of the information provided to it, as minimum due process requires it to do.

*Hensley*, 850 F.2d at 277 (emphasis in original). Such information would allow the finder of fact "to come to a reasoned conclusion that the informant is reliable and, therefore, that the story he has related to the investigating officer is likely to be true." *Id.*

Assuming arguendo that the reasons noted by the hearing officer do provide support for why the interviewer believed the confidential informant was a "reliable source in the past," that does not satisfy the due process requirement that the hearing officer independently assess confidential informant reliability and make a finding on that issue. Here, the hearing officer was "merely recording the findings made by the investigating officer who has made a determination about the informant's reliability, without making any determination for itself about the informant's reliability or even the basis for the investigator's opinion that the informant is reliable. To proceed in that fashion is not fact finding. It is recordkeeping." *Id.* at 276.

The last reliability test proposed in *Mendoza* is an in camera review of material documenting the investigator's assessment of the credibility of the confidential informant. See 779 F.2d at 1293. In this case, even if we assume the hearing officer reviewed such materials in conjunction with the investigating officers' report, there has simply been no finding of reliability. The DOC, in its motion to

reconsider, asked the court to perform an in camera review of the investigating officer's confidential reports upon which the hearing officer compiled his Appendix VI determinations. In effect, DOC asked the superior court to do what the hearing officer was obliged, yet failed to do — make a finding as to the confidential informants' reliability. Because V.R.C.P. 75 proceedings are in the nature of certiorari the parties cannot expand the findings on review. See Reporter's Notes, V.R.C.P. 75. The failure of the hearing officer to make the requisite findings cannot be rectified by a court's in camera review of facts and information not in the record.

The trial court's denial of DOC's motion for summary judgment was based in part on the absence of any lab report in the record. Because resolution of whether or not an inmate's Major B#20 conviction must be supported by lab reports is inconsequential to our holding today, we will not address DOC's arguments on that issue and its contention that physical evidence is not required to support a disciplinary rule conviction.

DOC argues that because prison officials must be afforded "wide ranging deference" in the adoption and execution of policies and practices that in their judgment are necessary "to preserve internal order and discipline and to maintain institutional security," this Court must defer to the DOC's practice regarding its evaluation of the reliability of confidential informant testimony. In matters of policy and procedures we agree that great deference should be shown agency administrators. We will not, however, defer to a procedure that violates constitutional rights.

A prisoner's due process rights may be permissibly circumscribed and properly balanced in order to effectuate the goals and proper administration of a penal institution. Yet what remains of the prisoner's due process rights may not be dismissed absent a more compelling justification. So while the "full panoply of rights due defendants" in a criminal prosecution do not apply to disciplinary actions, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime." *Wolff*, 418 U.S. at 555. Absent an independent finding of confidential informant reliability, there is no evidence to support the hearing officer's determination.

We affirm the trial court's denial of defendant's motion for summary judgment and order the DOC to expunge the disciplinary conviction of July 13, 2000 and restore any good time credits lost.

*Affirmed.*