In Re: Scott Millette, No. S368-03 CnC (Katz, J., Jan. 23, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                        SUPERIOR COURT
Chittenden County, ss.:                 Docket No. S368-03 CnC
                                                   S646-03 CnC

IN RE SCOTT MILLETTE

ENTRY

Petitioner and Department of Corrections (DOC) seek summary judgment each in their own favor regarding petitioner's challenge to DOC's revocation of petitioner's pre-approved furlough. In form, this is the second half of petitioner's challenge and is particularly addressed to the adequacy of his revocation hearing.

Petitioner initially challenged his furlough revocation in 2002 and was found to have a liberty interest in his pre-approved furlough status. Millette v. Gorczyk, S0436-02 CnC (Teachout, J., Jun. 19, 2002). This led to a hearing conducted by DOC, which concluded that the petitioner's furlough should be revoked. (Aff. Rick Danforth, July 30, 2003). While there is some conflict over the notice petitioner was given for this hearing, it is clear from the evidence of both parties that petitioner was given at least 24 hours notice prior to his hearing. (Pet. Resp. to Statement of Uncont. Mat. Facts at ¶ 10) (noting that petitioner was given a note on June 27,

2003 and had a hearing on June 28, 2003 at 4pm).  At the hearing, Officer Danforth reviewed: the petitioner's original relief from abuse order from July, 2001; Julie Corey's sworn affidavit describing the abuse petitioner committed against her while he was on furlough; and the notice of suspension of furlough given to the petitioner at the revocation of his furlough in March, 2002.  (Mot. for Summ. J. at 4).  The hearing officer also took live testimony from the petitioner's caseworker, and a friend of Julie Corey who testified for the petitioner.  Id.  Petitioner also introduced the testimony of his mother, father, friends, and former employer by telephone.  Id.  From this evidence, the hearing officer found that the petitioner had violated his furlough and concluded that it should be revoked.  Id. at Attach. 1.

Although petitioner complains that he was not given an accurate notice of his hearing and that its location was inconvenient for his defense, he cites to no case law and provides no support for his challenge.  (Opp'n to Mot. for Summ. J. at 4, 6).  According to petitioner, he was originally told that his hearing was to be on Sunday when in fact it occurred on Friday.  (Pet. Resp. to Statement of Uncont. Mat. Facts at ¶ 10).  If this is true, there appears to have been a communication mistake between DOC and petitioner.  The effect of the mistake, however, is dissipated by the fact that petitioner did have notice of his hearing and time to prepare his defense.  The argument that such time was inadequate falls flat against petitioner's actual defense.  Notwithstanding confusion over the time of the hearing, petitioner conducted a strong defense that included several witnesses and impeachment evidence against Corey's affidavit.  In the end petitioner had at least a day's notice to prepare for the hearing, the opportunity to call witnesses, and a meaningful chance to respond.  Petitioner's complaint's about location and notice might trigger greater review in a criminal trial, but this was an administrative hearing not subject to "the full panoply of rights due a [criminal] defendant."  Morrissey v. Brewer, 408 U.S. 471, 480

(1982).  Petitioner's notice and the hearing's location were sufficient.  Any mistakes committed by DOC personnel were harmless.

Petitioner's central challenge to the DOC's decision boils down to his inability to confront and cross-examine his main accuser Julie Corey.  Corey, who was petitioner's original accuser, complained in an affidavit that petitioner contacted her, despite conditions of his furlough restricting such contact, and forced her to revoke her original accusations, after which he punched her in the stomach.  (Mot. for Summ. J. at 2–3).  At petitioner's hearing, Corey's affidavit was entered into evidence, but Corey did not testify and was not subject to cross examination.  Petitioner argues that the due process framework in <u>Morrissey</u> requires that confrontation of adverse witnesses be included.  But as the section of <u>Morrissey</u>, that petitioner quotes from, notes, the right to confront adverse witnesses is a conditional one subject to the hearing officer's discretion based on good cause.  (Opp'n to Mot. for Summ. J. at 2) (quoting <u>Morrissey</u>, 408 U.S. at 489).  Even at the level of criminal trial where this right is at its zenith, confrontation is far from absolute and subject to reasonable limits.  See <u>State v. Muscari</u>, 174 Vt. 101, 117 (2002) (rejecting defendant's appeal based on limitations to his ability to cross-exam at trial).  In petitioner's case, there were additional consideration for the DOC.

Despite the petitioner's objections, DOC had good cause not to bring Corey into the administrative hearing.  In domestic cases with no contact injunctions, DOC should be sensitive to abusers attempting to continue to dominate their victims' lives as by reeling them into drawn-out hearings.  The hearing officer's decision not to bring Corey into the hearing reflected the kind of restraint that <u>Morrissey</u> suggests.  Neither <u>Morrissey</u> nor prior case law provides any type of test for reviewing a hearing officer's good cause.  Even petitioner does not directly challenge the basis for the hearing officer's decision but argues that he could have chosen differently.  (Opp'n to Mot. for Summ. J. at 5).  Such speculation alone cannot fuel an

overturning of a hearing officer's decision. Only some evidence is required to affirm a hearing officer's decision. Herring v. Gorczyk, 173 Vt. 240, 243 (2001) (citing Superintendent v. Hill, 472 U.S. 445 (1985)). As the hearing officer had good reason to keep Corey out of the process, based on the no contact injunction and the threat of subverting the hearing as a way of further entangling the victim, we accept the hearing officer's reasoning as good cause for the exclusion of Corey from the hearing.

Furthermore, petitioner fails to show any evidence that a cross-examination of Corey would have presented any new evidence to the hearing officer. At best, petitioner argues that he did not have the opportunity to impeach Corey, but petitioner did exactly that when he called Corey's friend as a witness since she contradicted Corey's statements and raised questions about Corey's credibility. (Mot. for Summ. J. at 4). Substantively then, petitioner fails to demonstrate how his lack of confrontation adversely affected his hearing so as to rob him of due process.

As this is also a rule 75 review of the hearing, we need only find "some evidence" in the record to support the hearing officer's final determination. Herring v. Gorczyk, 173 Vt. at 243. That is to say, our review is not to re-weigh the credibility of testimony and exhibits but rather is to sift the evidence available to the hearing officer for some basis of guilt. LaFaso v. Patrissi, 161 Vt. 46, 50 (1993). Given the strength of Julie Corey's affidavit as well as testimony provided by petitioner's caseworker, we find that there was enough evidence to support the hearing officer's findings. The evidence from these two sources alone suggest that petitioner violated the terms of his furlough by inquiring about Corey and then making contact with her. If believed, the two sources provide enough evidence to support petitioner's furlough revocation.

Based on the foregoing, petitioner's motion for summary judgment is denied, and Department of Corrections' is granted.

Dated at Burlington, Vermont_____, 20_____.


_____
Judge