Young v. Pallito, No. 277-10-11 Cacv (Teachout, J., April 19, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                                          **CIVIL DIVISION**
**Caledonia Unit**                                                    **Docket No. 277-10-11 Cacv**

**MARK A. YOUNG, II,**
      **Petitioner**

      **v.**

**ANDREW PALLITO, Commissioner,**
**Vermont Department of Corrections,**
      **Respondent**

## DECISION AND ORDER
### Cross-Motions for Summary Judgment

Petitioner is a prison inmate who seeks Rule 75 review of a disciplinary determination that when he freed a hand from a handcuff while in a holding cell at a courthouse, he was in possession of a dangerous instrument in violation of prison rules. There are no disputes of fact concerning what occurred during the incident. The issue is the interpretation of the rule as applied to the facts. The case is now before the Court on cross-motions for summary judgment.

Following this Court's December 21, 2012 Decision and Order on Defendant's Motion to Dismiss (Manley, J.), the parties agreed at a status conference held on February 15, 2013 (Teachout, J.) that the case was ripe for summary judgment and agreed to an on-the-record review. See e.g., *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 9, 191 Vt. 76 ("where the reviewing court is faced with a question of law and where the record is sufficient and complete, on-the-record review is appropriate"). Accordingly, the Court takes as true the following facts.[1]

At the time of the incident, Petitioner was in the custody and control of the Commissioner of the Department of Corrections (DOC) awaiting trial.[2] On June 30, 2011, Petitioner was transported to the Caledonia Courthouse for a court hearing. While restrained in handcuffs connected to a belly-chain and leg shackles, Petitioner was placed in a holding cell operated by the Caledonia County Sheriff's Department.

Petitioner asked one of the transport officers if his restraints could be adjusted so that he could use the toilet in the holding cell. His request was denied, and he was told to either hold it or use the toilet with the restraints in place. After the transport officers left the area in which the holding cell is located, Petitioner manipulated the handcuffs and his wrists so that one hand

---

[1] These are the same facts as found by the Court in the December 21, 2012 Decision and Order on Defendant's Motion to Dismiss (Manley, J.). The Court notes that at the February 15, 2013 status conference, neither party noted any objections to the facts as presented in the December 21 Decision and Order and thus, for the purpose of the instant cross-motions for summary judgment, the Court accepts those facts as the parties' agreed upon statements of undisputed material facts.

[2] Petitioner has since been sentenced after entering a plea of guilty in docket nos. 193-2-11 Cacr and 195-4-11 Cacr.

became free, apparently damaging the handcuffs in the process. Petitioner's other hand remained secured to the handcuffs attached to the belly-chain. Petitioner then used the toilet. There is no evidence that any part of the handcuffs broke off, or became separated. Photographs of the damaged handcuffs, attached to the Complaint as Exhibit M, show that the handcuffs appear to have been bent, but not broken apart or shattered.

When one of the transport officers returned to the area, Petitioner waved to him. When the transport officer noticed that one of Petitioner's hands was free, he called for additional officers to assist. Petitioner was ordered to his knees, told not to move or "he would be Tased," and was placed in stronger handcuffs. Complaint, Exhibit L. Petitioner was then transferred to a different holding cell, and no further incidents were reported. Later, Petitioner was returned to the correctional facility where he was being held and was issued a disciplinary report (DR) charge for attempting to escape—a Major A-03 violation.[3] The charge was subsequently amended to possessing dangerous instruments or weapons—a Major A-07 violation.[4]

After a disciplinary hearing, Petitioner was found guilty of committing the Major A-07 charge on July 5, 2011. The Hearing Officer concluded that "[o]nce the cuffs were broken or altered, they could have been considered a dangerous instrument" and that the incident "also caused staff response." Complaint, Exhibit H(2). Petitioner was sentenced to 20 days disciplinary segregation.

On July 6, 2011, Petitioner appealed his conviction to the Superintendent. Petitioner argued that he was convicted of an A-07 violation "with no evidence what-so-ever" and that "[i]t appeared as if the hearings officer was already convinced of my guilt prior to the hearing begining [sic]." Complaint, Exhibit B. The Superintendent affirmed the Hearing Officer, concluding that by breaking out of the handcuffs, Petitioner "create[d] a disturbance that threatened the orderly running of the facility in that extra staff had to be pulled from the facility to assist in returning [Petitioner] to the facility." *Id.*

On August 23, 2011, Petitioner submitted a Decision Appeal to Corrections Executive which was not answered. Petitioner subsequently filed the instant Complaint pursuant to Rule 75, seeking review of the Hearing Officer's decision that he committed a Major A-07 violation for possession of a dangerous instrument.

Following this Court's December 21, 2012 decision on Defendant's Motion to Dismiss, the parties cross-moved for Summary Judgment at a status conference on February 15, 2013.

---

[3] "Escape from an Institution A03A, armed escort A03B, Correctional Officer custody, to include intentional absence from a furlough or facility work crew from a correctional institution. A03C". DOC Directive 410.01, at 18, *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.

[4] "Possession, manufacture or introduction of any item that constitutes a danger to the order of the facility including, but not limited to, weapons, dangerous instruments, escape tools, or communications devices (e.g., cell phones). This also includes possession of any unauthorized weapon while in the custody of the Commissioner of Corrections outside a correctional facility (e.g., at Court, a hospital, etc.)." DOC Directive 410.01, at 18, *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.

"Summary judgment is appropriate, and the moving party is entitled to judgment as a matter of law, when there are no genuine issues of material fact." *Herring v. Gorczyk*, 173 Vt. 240, 243 (2001) (citations omitted); V.R.C.P. 56(a). "On judicial review of the sufficiency of the evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by 'some evidence' in the record." *Id.* (citing *LaFosa v. Patrissi*, 161 Vt. 46, 49 (1993)). The United States Supreme Court has held that, in determining whether the "some evidence" standard has been met, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Herring*, 173 Vt. at 243 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

Here, Petitioner was charged and convicted of a Major A-07 violation:

Possession, manufacture or introduction of any item that constitutes a danger to the order of the facility including, but not limited to, weapons, dangerous instruments, escape tools, or communications devices (e.g., cell phones). This also includes possession of any unauthorized weapon while in the custody of the Commissioner of Corrections outside a correctional facility (e.g., at Court, a hospital, etc.).

DOC Directive 410.01, at 18. A "dangerous instrument" is defined as "[a] weapon or any other unauthorized object or substance which may cause physical injury or death under the circumstances in which it is possessed, used, or attempted or threatened to be used, or is capable of being used." *Id.* at 3. "Possession," in relevant part, is defined as "[a]n item that is . . . found on one's person or the clothing being worn by that person." *Id.* at 5.

The Court concludes that even under the generous and highly deferential "some evidence" standard, here, there is no evidence to support a conclusion that Petitioner was in "possession" of a "dangerous instrument" under a reasonable legal interpretation of that standard. When a prisoner is placed into restraints while in custody, the prisoner is not necessarily in "possession" of those restraints. In this case, it does appear that Petitioner did intentionally intend to free his wrist. That he was actually able to do so without assistance does not, without more, transform the handcuffs from an item used by DOC for restraining him to an item "found on one's person or the clothing being worn by that person."[5] Here, the evidence does not show that Petitioner used his free hand to control the handcuff as a possession or instrument. The evidence is that he pulled his hand free, damaging the handcuff in the process, but not that he thereafter attempted to use it for any purpose.

_____

[5] DOC's definition of "possession" also includes

An item that is . . . found in one's personal belongings or cell; or . . . found in an area that one exerts control over, and there is independent evidence that the inmate knew it was there. Independent evidence of knowledge includes, but is not limited to:
a.  information exists supporting that the inmate had knowledge the contraband was there;
b.  staff observation of the inmate's behavior led to staff suspicion that the inmate is hiding contraband;
c.  staff observed an inmate with contraband; or
d.  other evidence indicated the contraband was placed by the inmate.

DOC Directive 410.01, at 5, *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.

Additionally, the definition of "dangerous instrument" requires that the object at issue be able to both "cause physical injury or death" and be able to do so "under the circumstances in which it is possessed, used, or attempted or threatened to be used, or is capable of being used." Theoretically, nearly any physical object can "cause physical injury" and possibly even death, depending on how it is used. However, here, there is no indication that Petitioner "used, or attempted or threatened to use[]" the bent handcuff in a manner designed to cause physical harm. While the hearing officer concluded that the "[o]nce the cuffs were broken or altered, they could have been considered a dangerous instrument," there is no evidence to support a finding that Petitioner used them in such a manner, or even that they could have been used in such a manner. The item must be capable of causing "physical injury or death" "under the circumstances in which it is possessed." The record evidence does not show that the slightly bent handcuff on the end of a short chain still attached to Petitioner's other wrist and also connected to a belly chain around his waist was realistically capable of "caus[ing] physical injury or death."

While the standard only requires that there be "any evidence in the record," the hearing officer did not have evidence from which to conclude that "under the circumstances in which [the bent handcuff was] possessed," it could have "cause[d] physical injury or death." The facts support the Hearing Officer's conclusion that Petitioner "create[d] a disturbance that threatened the orderly running of the facility in that extra staff had to be pulled from the facility to assist in returning [Petitioner] to the facility." The fact that the incident caused a "staff response," without evidence of use of the handcuff by Petitioner in a manner to justify a staff response *to use of a dangerous instrument*, is insufficient to constitute "any evidence" to support the conviction for the specific charge of possessing a dangerous instrument.

If the Court were to adopt the interpretation urged by DOC, even in a situation in which the restraining hardware malfunctioned without influence by a prisoner, or was improperly secured prior to being placed upon a prisoner, and the prisoner made no obvious or implied attempt at using the item for any purpose whatsoever, that prisoner could be charged with committing a Major A-07 by the mere fact that the prisoner happened to have the handcuff attached to his or her body.

While it is possible that a prisoner in restraints who frees a hand from handcuffs could, under some circumstances, act in a manner involving taking possession of the handcuffs for his own purposes—including using them as a weapon—under the facts of this case, without evidence of such action on the part of Petitioner, the Court cannot conclude that Petitioner was in "possession" of the bent handcuff as a dangerous instrument.

**ORDER**

Petitioner's Motion for Summary Judgment is *granted*. Defendant's Motion for Summary Judgment is *denied*. Petitioner's counsel shall prepare a Judgment.

Dated at Saint Johnsbury, Vermont, this 19th day of April, 2013.

_____
Hon. Mary Miles Teachout
Superior Court Judge

4