*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-050

JULY TERM, 2015

| | |
|---|---|
| Bernard Carter | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| v. | } Civil Division |
| | } |
| | } |
| Andrew Pallito, Commissioner, | } DOCKET NO. 494-8-13 Wncv |
| Vermont Department of Corrections | } |

Trial Judge: Mary Miles Teachout

In the above-entitled cause, the Clerk will enter:

Inmate Bernard Carter appeals from the trial court's summary judgment decision in favor of defendant on his Vermont Rule of Civil Procedure 75 complaint. We affirm.

Mr. Carter was convicted of a serious disciplinary violation (sexual assault) in July 2013 following a hearing. He was placed in administrative segregation as a punishment. In August 2013, Mr. Carter filed a Rule 75 complaint. He asserted that the Department of Corrections (DOC) violated his due process rights, arbitrarily abused its discretion, and sanctioned him based upon insufficient evidence. He asked the court to vacate the DOC's decision. The parties filed cross-motions for summary judgment, and in January 2015, the court granted summary judgment to defendant.

The court found the following facts undisputed. At the DOC disciplinary hearing, the hearing officer was presented with several reports written by correctional officers concerning Mr. Carter's alleged sexual assault of his former cellmate. According to the officers' reports, an inmate reported that Mr. Carter may have sexually assaulted his (Mr. Carter's) former cellmate. When asked, the former cellmate surmised that he had been anally raped by Mr. Carter. The cellmate stated that he was heavily medicated at the time and unaware that the rape had occurred, but that he had noticed heavy bleeding. Medical personnel found rectal bleeding but no injuries or other evidence suggestive of rape. It was also discovered that the cellmate's medication would not have caused him to be unaware of such a significant event. When prison officers told him that their investigation did not support his charge of rape, they asked him whether he had engaged in sexual relations with Mr. Carter while awake. The cellmate stated that he had eventually acquiesced to Mr. Carter's repeated requests for oral sex due to Mr. Carter's threats of violence. The cellmate described aspects of the encounters in detail, which was recounted in the reports. Mr. Carter was the only witness at the DOC hearing. He denied committing sexual assault.

Based on the DOC reports, the hearing officer found Mr. Carter guilty and placed him in administrative segregation. Mr. Carter pursued an internal appeal concerning the disciplinary violation, and the decision was affirmed. A subsequent hearing was held to determine if administrative segregation was warranted. A hearing officer in that proceeding found that administrative segregation was not warranted because the cellmate had motive to lie and lacked credibility. The prison superintendent subsequently ordered a new hearing at which administrative segregation was found to be warranted.

In his Rule 75 complaint, Mr. Carter argued that his former cellmate got caught in a lie about being anally raped and then made up another lie to avoid discipline. Mr. Carter maintained that the record did not include indicia of reliability that should be present in cases involving confidential witnesses. He asserted that the hearing officer's findings at the first hearing concerning administrative segregation bolstered his position that his conviction was unfounded.

As the trial court explained, its review of the DOC decision was very limited. The law requires "some evidence" of guilt in the administrative record to ensure that the administrative discipline was not arbitrary. LaFaso v. Patrissi, 161 Vt. 46, 49-50 (1993) (recognizing, as stated in Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 456 (1985), that prison authorities need only have "some evidence" that an inmate committed a disciplinary infraction in order to satisfy due process); see also Wolff v. McDonnell, 418 U.S. 539, 556, 567-69 (1974) (recognizing that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings [including confrontation and cross-examination of witnesses] does not apply"). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

In this case, the court found that the correctional officers' reports documented that they had investigated the original allegation, challenged the cellmate's version of events when other evidence failed to corroborate it, questioned the cellmate extensively, and eventually received what they thought was the real story concerning a series of oral-sex encounters. The hearing officer found this evidence persuasive. The court found that statements in reports alone could satisfy the "some evidence" standard. See, e.g., McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999); Rudd v. Sargent, 866 F.2d 260, 262 (8th Cir. 1989). It was the hearing officer's role to evaluate the credibility of the evidence, including the reports, and decide the facts, and the court found "some evidence" to support the decision here.

The court rejected Mr. Carter's assertion that the credibility standards for confidential witnesses should apply. See Herring v. Gorczyk, 173 Vt. 240, 243 (2001) (recognizing that " 'the "some evidence" standard may be met even where the only evidence was supplied by a confidential informant, as long as there has been some examination of indicia relevant to [the informant's] credibility' " (quoting Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001))). Because there were no confidential witnesses involved in this case, the court found that this argument did not apply. The court also rejected Mr. Carter's argument that the findings in the first administrative segregation hearing should have an impact on the record at the disciplinary hearing. The fact that a different hearing officer might have arrived at a different conclusion

after consideration of the same evidence, the court explained, did not show that the record of the disciplinary hearing lacked "some evidence." The court thus granted summary judgment to defendant. This appeal followed.

On appeal, Mr. Carter argues that the standard of review for all prison disciplinary cases should be "some reliable evidence." He cites Luna v. Pico, 356 F.3d 481 (2d Cir. 2004), in support of his position. In that case, the United States Court of Appeals for the Second Circuit recognized that the minimum requirements of procedural due process are satisfied when the findings of a prison disciplinary board are supported by "some evidence" in the record. Id. at 488. It interpreted the words "some evidence" to mean "some reliable evidence." Id. Mr. Carter maintains that this standard is consistent with the standards used by this Court in probation and parole revocation cases. Additionally, he argues that this standard enhances the goal of minimizing the risk of erroneous adjudication and places little burden on prison administrators or reviewing courts. He suggests that, in applying this standard, the Court should use the reliability standards enunciated in Herring, 173 Vt. at 244, for confidential informant cases. Using these standards, Mr. Carter argues that the evidence here was not reliable. Mr. Carter again points to the hearing officer's findings in the first administrative segregation hearing as support for his argument that the evidence was not sufficient to show that he committed a disciplinary violation.

We find no basis to disturb the court's summary judgment decision. See Herring, 173 Vt. at 243 (summary judgment appropriate when no genuine issue of fact exists and moving party entitled to judgment as matter of law). Even if we were to adopt the standard employed by the Second Circuit, we would reject Mr. Carter's arguments on the record before us.

In Luna, an inmate was found guilty of stabbing another inmate following an administrative disciplinary proceeding and he was sentenced to confinement in a special housing unit. 356 F.3d at 484. At the hearing, the inmate denied the charge. The victim refused to testify, but a letter written by the victim was read into the record. Id. at 484-85. In the letter, the victim stated that the inmate had stabbed him. The remaining evidence was a "misbehavior report," which indicated that the victim had said that the inmate stabbed him several times. Id. at 485. The correctional officer who wrote the misbehavior report did not testify. A hearing officer found the inmate guilty, but the Department of Correctional Services (DOCS) Special Housing and Inmate Discipline Unit reversed, finding that the evidence did not support the charges and that the hearing officer had failed to interview the author of the report and that the report was not based on staff observation, and accordingly ordered a rehearing.

At the second hearing, the inmate again denied the charge and the victim again refused to testify. The misbehavior report was read into the record. Id. This time, the authoring officer testified. He stated that he wrote the report based on the victim's written statement and on an investigative report by another correctional officer. This officer did not speak to the victim himself and testified that he had "no idea" if the victim was telling the truth. Id. The officer who investigated the incident prepared a report in which he described the victim's version of events as related to him by the victim. This report was made part of the record before the hearing officer as well. A correctional officer who was on the scene during the incident also testified, but she did not see the stabbing, and she did not know the inmate's location at the time of the incident. The hearing officer again found the inmate guilty, and the DOCS Special Housing and Inmate Discipline Unit again reversed, finding that the misbehavior report was not based upon

3

first-hand observation, the reporting employee obtained information third-hand, and further testimony from the staff who conducted the investigation was warranted. Id. at 486.

The inmate then filed a complaint under 42 U.S.C. § 1983, alleging that he was deprived of due process of law. After reviewing relevant case law, the Second Circuit determined that the phrase "any evidence" used by the United States Supreme Court in Hill meant that there must be "reliable evidence" of an inmate's guilt. Id. at 488. It concluded that the disciplinary decisions at issue failed this test. "In the end," the court concluded, "the 'evidence' consisted solely of a bare accusation by a victim who then refused to confirm his initial allegations." Id. at 489. It found that while the victim clearly had been stabbed, no apparent effort had been made to verify the charge that the inmate did the stabbing, nor had there been any apparent attempt to evaluate the victim's credibility. The hearing officers similarly had not attempted to assess the victim's credibility, nor did the record show that they were presented with any evidence that any corrections official made any effort to evaluate the truthfulness of the victim's allegations against the inmate.

In reaching its conclusion, the Second Circuit emphasized that a victim was not required to testify in a prison disciplinary proceeding before an accused inmate could be found guilty of assault. It recognized that "prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Id. (quotation omitted). While it was clear that "the reluctance of a victim to testify against his alleged assailant [could not] be allowed to interfere with an institution's effort to maintain order and security," the court concluded that "prison officials would not be unduly burdened by the requirement that they engage in some examination of factors that may bear on a victim's credibility, just as they are required to independently assess information provided by a confidential informant." Id. (citation omitted). "Due process," the court stated, "requires that there be some 'independent credibility assessment' of a victim." Id. In Luna, the inmate was punished "[b]ased on a bare accusation, and without the support of any credible evidence." Id. at 489-90. The court thus concluded, "as a matter of law, that a prisoner's due process rights are violated, as in the confidential informant context, when [the prisoner] is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited." Id. at 490.

In the instant case, both the correctional officers and the hearing officer made an independent assessment of the alleged victim's credibility. In their reports, the correctional officers described their investigation and how they had confronted the alleged victim when other evidence failed to corroborate his belief that he had been anally raped. They met repeatedly with the alleged victim, whom they described as twenty-one years old, quiet, and meek. The correctional officers recounted how the alleged victim had taken a deep breath and dropped his head completely when he first stated that defendant had forced him to have oral sex. The cellmate also provided extensive detail to them about the alleged assaults.

The correctional officers also interviewed Mr. Carter, who was forty-three years old at the time. Mr. Carter had a prior documented history of sexually-abusive behavior while incarcerated and he was serving a sentence of 45 years to life for aggravated-sexual assault. Mr. Carter did not indicate that the cellmate had a grudge against him or identify any other issue that might prompt a false allegation. Based on the evidence gathered, both correctional officers

4

stated their belief that Mr. Carter was guilty of the charged disciplinary offense. In other words, they found the cellmate's story to be credible. The hearing officer agreed. In his findings of fact, he found certain details provided by the victim "to[o] strong to ignor[e]," and he found that the victim had provided a "very vivid" and detailed account of the assaults.

The record thus shows that there was an "independent credibility assessment" of the alleged victim here, and Mr. Carter was not "punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited." Id. at 489-90. Given this, there is no need to also assess the reliability factors that we identified in Herring with respect to confidential informants. Those factors are not an exclusive list and they are not relevant here. See 173 Vt. at 243-44 (citing Mendoza v. Miller, 779 F.2d 1287, 1293 (7th Cir. 1985) and that court's list of four ways that reliability of confidential informant may be established, including: (1) oath by investigating officer as to truth of report containing info ration and officer's appearance before disciplinary committee; (2) corroborating testimony; (3) statement on the record by chairman of disciplinary committee that he had firsthand knowledge of sources of information and considered them reliable on basis of their past record of reliability; or (4) in camera review of material documenting investigator's assessment of the credibility of confidential informant). At its core, Herring recognized in the confidential informant context that there must be "some examination of indicia relevant to [the informant's] credibility," 173 Vt. at 243 (quotation omitted), and there has been such an assessment of the accuser's credibility here. Thus, because the disciplinary violation was supported by evidence in the record, summary judgment was properly granted to defendant. We agree with the trial court, moreover, that a second hearing officer's assessment of the same evidence has no bearing on whether the evidence before the first hearing officer was sufficient. See State v. Parker, 149 Vt. 393, 401 (1988) (explaining that where court has discretion to make ruling, error not shown simply because different judge faced with same evidence might reach different conclusion).

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice