STATE OF VERMONT
RUTLAND COUNTY

ROBERT MEE                                )
                                          )       Rutland Superior Court
v.                                        )       Docket No. 122-2-08 Rdcv
                                          )
ROBERT HOFMANN, Commissioner,             )
Department of Corrections                 )       CONFORMED COPY
                                                  RUTLAND SUPERIOR COURT

                                                  JUL 18 2008

DECISION
Plaintiff's Motion for Summary Judgment, filed May 28, 2008

Plaintiff Robert Mee is an inmate who seeks the expungement of a disciplinary report for "introduction of any item that constitutes a danger to the order of the facility," and relief from its collateral consequences.[1] He contends that the disciplinary report was not proven by a preponderance of the evidence at the hearing because the Department of Corrections never articulated what item ("contraband") was allegedly introduced, nor found any "contraband," nor explained how the alleged item constituted a danger to the order of the facility. Defendant Commissioner of the Department of Corrections argues that the decision of the hearing officer should be affirmed because it is supported by "some evidence" of guilt.

Plaintiff's Motion for Summary Judgment was filed May 28, 2008 by attorney Dawn Seibert of the Prisoner's Rights Office. Oral argument was heard on June 30, 2008. Mr. Mee was present and was represented by Ms. Seibert, who appeared by phone. Defendant was represented by attorney Emily Carr, who also appeared by phone. Prior to the hearing, on June 2, 2008, Defendant filed a Motion for Summary Judgment which is not ripe, but addresses the same facts and issue.

Review of all of both parties statements of undisputed facts shows that material facts are undisputed. Mr. Mee is an inmate at the Marble Valley Regional Correctional Facility. On February 2, 2008, he received a visitor in the visiting area, which is monitored by corrections officers and security cameras. During the visit, an officer observed Mr. Mee engaging in suspicious behavior consistent with receiving an item from the visitor and either "packing" the item or passing it to another inmate.[2] Both inmates were strip-searched before returning to their living units per standard procedure, but no contraband was found.

_____

[1] The parties have not disputed that the collateral consequences faced by Mr. Mee are a sufficient deprivation of liberty to invoke Mr. Mee's right to procedural due process. *Conway v. Gorcyzk*, 171 Vt. 374, 376–77 (2000); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff's counsel stated at a status conference that the DR at issue in this case prevents him from being eligible for work camp.
[2] "Packing" refers to the act of inserting contraband into a body cavity for the purpose of concealment.

1

The suspicious conduct was then brought to the attention of Correctional Facility Shift Supervisor Travis Denton, who observed the security videotape of the visiting room and agreed that the videotape showed Mr. Mee engaging in behavior consistent with "packing." He ordered a search of the living units of Mr. Mee and the other inmate, which was performed approximately fifteen to thirty minutes after the inmates had returned to their cells. No contraband was found.

Mr. Mee and the other inmate were then placed into "dry cells," or rooms without running water so that if either inmate eliminated any contraband along with their waste, it could be recovered. Again, no contraband was found.

DOC subsequently issued Mr. Mee a disciplinary report for a Major A#7 DR violation for "possession, manufacture or introduction of any item that constitutes a danger to the order of the facility including, but not limited to, weapons, dangerous instruments, escape tools, or communication devices (e.g., cell phones)." At the disciplinary hearing, the Department relied upon the security videotape, a staff report filed by Mr. Denton, and a staff report filed by Corrections Officer II Don Nicoll, who investigated the matter. Mr. Denton's staff report described the contents of the videotape and the results of the searches, which found no contraband. Mr. Nicoll's staff report agreed that the videotape showed behavior consistent with the act of "packing," but cautioned that "although his actions appear to be suspicious, there is no *clear* indication of him being in possession of any contraband, nor is there any clear indication that he passed contraband off to another resident." After the hearing, the hearing officer found by a preponderance of the evidence that Mr. Mee was guilty of introducing an item that constituted a danger to the order of the facility.

Mr. Mee now seeks review of this determination under V.R.C.P. 75. For the purposes of his Motion for Summary Judgment, Mr. Mee concedes that the videotape shows behavior consistent with "packing," and that an inmate would only "pack" an item if it were prohibited by the facility. He contends, however, that his conviction should be reversed because the Department has not explained how the alleged item, if any, constituted a danger to the order of the facility.

DOC contends that the conviction should be affirmed because it is supported by circumstantial evidence. See *Silva v. Coughlin*, 1992 WL 116744 at *5 (S.D.N.Y., May 18, 1992) (Mukasey, J.) (explaining that disciplinary reports may be proven by circumstantial evidence). DOC asserts that the security videotape and staff reports show that Mr. Mee engaged in behavior consistent with the act of "packing," and that this provides circumstantial evidence that Mr. Mee attempted to introduce an item prohibited by the facility. DOC also suggests that the failure to locate the actual contraband can be explained by the 15 to 30 minute window between when Mr. Mee returned to his living unit and the search, which could have provided Mr. Mee with an opportunity to hide or conceal the item. Finally, DOC contends that any item prohibited from the correctional facility also constitutes a danger to the order of the facility, and that the circumstantial evidence accordingly provides "some evidence" of guilt in this case.

2

The role of this court is to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Herring v. Gorcyzk*, 173 Vt. 240, 243 (2001) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)). Although this is a deferential standard of review, a prisoner accused of a disciplinary violation may not be punished unless his guilt is established before the hearing officer by a preponderance of the evidence. *LaFaso v. Patrissi*, 161 Vt. 46, 54 (1993). "On judicial review of the sufficiency of evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by 'some evidence' in the record." *Herring*, 173 Vt. at 243 (quoting *Hill*, 472 U.S. at 455).

Plaintiff relies upon two federal cases that cast doubt upon the Department's reasoning. The first is *Hayes v. McBride*, in which the federal district court reversed a disciplinary report for possession of an intoxicant because the State did not present any evidence to establish the identity of the yellow-orange liquid found in the inmate's cell, and did not establish that the liquid constituted an intoxicant. 965 F. Supp. 1186, 1189–90 (N.D. Ind. 1997). The court explained that while the State was not required to introduce the actual contraband found in the prisoner's cell in order to prove possession, see *Griffin v. Spratt*, 969 F.2d 16, 22 (3rd Cir. 1992) (Alito, J.), the State was required to determine that the substance "was, in fact, an intoxicant." *Id.*

Similarly, in *Smith v. Robinson*, the court held that genuine issues of material fact existed as to whether the inmate had possessed contraband where the State presented evidence that a number of items had been found in the inmate's cell, including nails and a screwdriver, but did not present evidence showing that the items were contraband within the meaning of the applicable disciplinary regulation. 495 F. Supp. 696, 700–02 (E.D. Pa. 1980). Taken together, these two cases reflect the principle that, when proving disciplinary violations based upon possession of a prohibited item, the State is required to show that alleged contraband items are in fact prohibited under the regulation at issue.

Circumstantial evidence establishes "some evidence" that Mr. Mee introduced something into the facility, and that the item was prohibited by the facility. Under the reasoning of *Hayes* and *Smith*, the issue is whether the record contains "some evidence" to show that the item was, in fact, an "item that constituted a danger to the order of the facility" within the meaning of DOC Directive #410.01.

DOC admits that there is no direct evidence of the identity or nature of the item allegedly introduced, but suggests that the court may infer that any item prohibited by the facility also constitutes a danger to the order of the facility. This inference is impermissibly overbroad because it blends the distinction between possession of ordinary "contraband" and possession of "items that constitute a danger to the order of the facility," which are treated differently by DOC itself, as shown in DOC Directive #410.01. The proposed inference is additionally overbroad because it ignores distinctions between a wide variety of possession-based offenses for different categories of prohibited items, all of which are set forth in the DOC Directive.

The DOC Directive defines "contraband" as "anything not authorized to be in an inmate's possession." Possession of contraband items is classified as a Minor M#02 DR violation as long as the contraband item is not separately described as a Major disciplinary violation. Thus, possession of an item that is prohibited by the facility is classified as a Minor DR violation unless possession of the item is specifically classified as a Major DR violation.

The DOC Directive defines at least five possible Major DR violations based on possession of items specifically prohibited by the facility. These violations include possession of (1) "alcohol, narcotics, depressants, stimulants, hallucinogenic substances or marijuana . . . or related paraphernalia," (2) "any amount of tobacco in excess of one cigarette," (3) "stolen property," (4) "tattooing tools," and (5) "any item that constitutes a danger to the order of the facility." Proof of these violations requires proof that the item possessed fits the proscribed category, and DR violations based upon possession of these specific items are subject to different sanctions depending upon which prohibited item was possessed.

For example, possession of an item that constitutes a danger to the order of the facility is a "Major A" offense, which is the most serious category of offenses reserved for "violent acts or serious threats to institutional security or personal safety," and which is punishable by 0-30 days disciplinary segregation, among other sanctions. The severity of the offense is consistent with the non-exhaustive list of items described as constituting a danger to the order of the facility, including weapons, dangerous instruments, escape tools, or communication devices. On the other hand, possession of stolen property is a "Major B" offense, which is less serious, and which is punishable by 0-5 days disciplinary segregation. Minor violations are the least serious offenses, and subject to some sanctions, but not disciplinary segregation.

In other words, DOC itself makes distinctions between different types of contraband, at two levels. First, there are items that are prohibited but possession results in a minor violation ("regular" contraband). Second, there is a group of five categories of items that call for a stronger disciplinary response. Each of the five types are specifically defined, the one at issue in this case being contraband that constitutes a "danger to the order of the facility." The fact of such distinctions contradicts DOC's argument that anything that is prohibited and hidden by an inmate is dangerous to the order of the facility. Furthermore, an inmate could easily want to hide an item of less serious contraband in order to avoid even a minor disciplinary violation; the fact of hiding is not sufficient to carry an inference that the item meets the standard of representing dangerousness within the facility.

What distinguishes a DR violation for possession of an item that constitutes a danger to the order of the facility from a range of other Major and Minor DR violations, including possession of mere contraband, is "some evidence" that the item constitutes a danger to the order of the facility.

In this case, even assuming that there is "some evidence" that Mr. Mee introduced a contraband item into the facility, there is no evidence in the record to show that the item falls into the category of an item that constitutes a danger to the order of the facility, which is an essential element of a Major A#7 DR violation. In light of the reasoning set forth in the *Hayes* and *Smith* opinions, and the lack of evidence concerning the nature of contraband in this case, this court cannot conclude that the disciplinary report is supported by "some evidence" in the record, and it must therefore be reversed.

## ORDER

(1) Plaintiff's Motion for Summary Judgment, filed May 28, 2008, is *granted*; and

(2) DOC is ordered to *expunge* the Major A#7 Disciplinary Report from Plaintiff's file.

Dated at Rutland, Vermont this 17th day of July, 2008.

Hon. Mary Miles Teachout
Presiding Judge