Filed 02/12/26

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case Nos. 24-CV-02735
24-CV-01465

---

In RE: Darryl Hendrickson

---

DECISION AND ORDER

Petitioner Darryl Hendrickson brought these two Rule 75 appeals. On August 13, 2024, the court held a pretrial conference in 24-CV-01465 and consolidated the two cases, with 24-CV-02735 as the lead case. On December 8, 2025, the court noticed the lead case for bench trial on February 10, 2026. The court held trial on that date and took the matter under advisement. For the reasons that follow, the court enters judgment for Respondent Michaela Merrill in 24-CV-02735.

## I. Findings of Fact

Based on a preponderance of the credible evidence admitted at trial, the court makes the following findings, focusing on the facts most relevant to Mr. Hendrickson's petition. The trial evidence consisted exclusively of testimony by Mr. Hendrickson and Respondent Merrill. Neither party offered any other evidence. Mr. Hendrickson did not file any agency record in his cases. Nor did he offer any at trial.

Mr. Hendrickson's complaints and filings raise a wide variety of allegations and possible claims. At the start of trial, he effectively withdrew or waived all but one – he challenges the disciplinary rule violation (DR) for sexual assault that partially supports his closed custody classification now.

Mr. Hendrickson's testimony and that of Respondent Michaela Merrill, the Superintendent of Southern State Correctional Facility, established that the DR began when Mr. Hendrickson resided at Marble Valley Correctional Facility in Rutland. The incident took place in October 2024. Following an investigation by the correctional investigations unit (also referred to the Vermont State Police like all sexual assault allegations), Mr. Hendrickson was found by a preponderance of the evidence to have committed sexual assault. That standard of proof applies to the correctional institution's disciplinary process. When Mr. Hendrickson first transferred to Southern, that process had already begun. It concluded after his arrival at Southern. The investigation did not collect any DNA evidence, as happens in other similar cases for various reasons. Mr. Hendrickson appealed the conviction but it was affirmed.

Mr. Hendrickson also has a subsequent conviction for assault at Southern. That case began as a sexual assault investigation, but the victim did not move forward. The matter resulted in an assault conviction which Mr. Hendrickson also appealed. That conviction was affirmed.

As a result of those convictions and other institutional behavior resulting in a number of points in his classification score, Southern placed Mr. Hendrickson in closed custody classification. Superintendent Merrill generally has discretion to override classifications to move an inmate up or down the classification ladder. In Mr. Hendrickson's case, his closed custody classification results from his points alone, without any override by Superintendent Merrill. His points derive largely from his sexual assault conviction. He would have received a comparable amount of points from an equally serious non-sexual assault conviction.

In addition, Mr. Hendrickson's institutional behavior includes a record of violence and assaultive behavior against other inmates, particularly prior cellmates. Southern does not currently assign cellmates to Mr. Hendrickson to protect their safety, given his history. Mr. Hendrickson freely and repeatedly admitted to that conduct during his testimony.

Despite Mr. Hendrickson's closed custody classification, his behavior and classification have improved from his previous classification in administrative segregation. More recently, his better behavior has also earned him a job in Southern's laundry. Mr. Hendrickson expressed his gratitude to Superintendent Merrill for her open-mindedness about him and her willingness to provide him these opportunities to demonstrate his continued progress as an inmate.

Throughout his testimony, Mr. Hendrickson repeatedly insisted that he did not commit the sexual assault that forms the basis for his challenged DR. He maintained that the DR should not remain without DNA evidence. The parties agree none exists for the underlying incident. Mr. Hendrickson did not offer any corroborating evidence.

## II. Discussion

"Rule 75 provides for review of 'action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74.'" *Rose v. Touchette*, 2021 VT 77, ¶ 13, 215 Vt. 555 (quoting V.R.C.P. 75(a)). "[W]hen reviewing administrative action by the DOC under V.R.C.P. 75, [courts] will not interfere with the DOC's determinations absent a showing that the DOC clearly and arbitrarily abused its authority." *King v. Gorczyk,* 2003 VT 34, ¶ 7, 175 Vt. 220 (citation omitted). On "judicial review of the sufficiency of evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by 'some evidence' in the record." *Herring v. Gorczyk*, 173 Vt. 240, 243, 789 A.2d 955, 958 (2001); *see also LaFaso v. Patrissi*, 161 Vt. 46, 49 (1993) (describing "the appropriate standard for judicial review of the actions of prison authorities"). "[A]ny evidence" supporting the disciplinary board's conclusion satisfies the "some evidence" standard. *Herring*, 173 Vt. at 243 (citing *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)).

Because Mr. Hendrickson provided no agency record for the challenged DR, the court can only look to the trial evidence consisting exclusively of the testimony of Mr. Hendrickson

and Superintendent Merrill. Mr. Hendrickson never contradicted Superintendent Merrill's testimony that the DR resulted from a preponderance of the evidence proving the sexual assault, even though no DNA evidence existed. He simply denied committing the sexual assault. The parties agree Mr. Hendrickson appealed that conviction unsuccessfully. Mr. Hendrickson challenged none of Superintendent Merrill's testimony, as much as he protested his innocence and registered his strong disagreement with the proceeding's outcome due to the lack of DNA evidence.

Under these circumstances, this court concludes that Mr. Hendrickson has not made "a showing that the DOC clearly and arbitrarily abused its authority." *King*, 2003 VT 34, ¶ 7. Other than the absence of DNA evidence, Mr. Hendrickson asserts no failure of the DR process or abuse of DOC's discretion. *See Sylvester v. Pallito*, Nos. 2010-277, 2010-278, 2010-279, 2010-280, 2010-281, 2011 WL 4984753, at *3 (Vt. Mar. 4, 2011) (unpub. mem.) (affirming dismissal where "plaintiff failed to allege circumstances indicating an extreme or arbitrary abuse of discretion amounting to a failure to act"). Mr. Hendrickson has not shown that the DR proceedings require DNA evidence or that its absence somehow constitutes a clear and arbitrary abuse of Superintendent Merrill's discretion. *See Buell v. Hofmann*, No. 2009-310, 2010 WL 7799816, at *2 (Vt. May 21, 2010) (unpub. mem.) (stating that "trial court was not required to engage in a fact-finding analysis" "[g]iven the undisputed evidence"). Given the DR's initial outcome and affirmance following Mr. Hendrickson's contested appeal, this court concludes that "some" or "any" evidence supported his sexual assault DR conviction. *Herring*, 173 Vt. at 243.

### III. Order

The court enters judgment for Respondent Superintendent Merrill in 24-CV-02735.

The court will set a status conference in 24-CV-01465 in the next 30 days. Mr. Hendrickson should consider whether his complaint in that case challenges anything different than what his trial addressed in 24-CV-02735. If not, then 24-CV-01465 may merit dismissal.

Electronically signed pursuant to V.R.E.F. 9(d) on February 11, 2026.

Colin Owyang
Superior Court Judge